THE DURO COMPANY, INC., A BODY CORPORATE, PLAIN-
TIFF, v. DAVID WISHNEVSKY. INDIVIDUALLY AND
TRADING AS MOHAWK LAUNDRY, DEFENDANT.

Submitted September 8, 1940—Decided November 4, 1940.

Before Justice HEHER, at the Passaic Circuit.

For the motion, *Feder & Rinzler.*

*Contra, Charles C. Wacks.*

HEHER, J. There was an interlocutory judgment by default upon a complaint charging that defendant had "willfully, maliciously and unlawfully removed ˙ * * * from the premises at Lexington and Main Street, Lakewood, New Jersey," and had also "retained possession of," certain goods sold and delivered by plaintiff to a third person under a conditional sales contract, whereby title was reserved to the ·vendor pending the payment of the purchase price, and it was also agreed that, meanwhile, the goods should "be kept by the purchaser" at the premises aforesaid, "and not elsewhere, without the consent in writing of the seller;" and further that, although plaintiff was entitled to the possession of the goods for noncompliance with the stipulation for payment of the purchase price, and had so notified defendant, the latter "deliberately refused to turn over possession thereof" to him. It seems to be conceded that the jury awarded compensatory and punitive damages, in accordance with the demand of the *ad damnum* clause.

Plaintiff now moves for a *capias ad satisfaciendum* on the ground that the judgment is "based upon" defendant's "willful, malicious and unlawful removal and retention of the possession" of the goods, and his "conversion thereof" to his own use, and that the judgment "includes punitive damages because of the willful, deliberate and malicious" act of defendant.

*R. S.* 1937, 2:27-341, derived from chapter 88 of the laws of 1934 (*Pamph. L., p.* 265), constitutes a limitation upon the right to a *ca. sa.* in actions *ex delicto,* since under the pre-existing law this writ ordinarily issued as a matter of course in such actions. *Vide Kintzel* v.·*Olsen,* 73 *Atl. Rep.* 962. The constitutional inhibition against imprisonment for debt does not extend to actions of this nature. *Article* 1, *paragraph* 17. While there has been a contrariety of view as to whether the original purpose of a *ca. sa.* was to enforce payment of the judgment, or was also punitive in character, its normal function in this state is the compulsory surrender of the judgment debtor's property for the benefit of his creditors. *R. S.* 1937, 2:35-1, *et seq.* See, also, *Bowne* ads. *Titus and Scudder,* 30 *N. J. L.* 340; *Steelman* v. *Mattix,* 36

*Id.* 344; *Meliski* v. *Sloan,* 47 *Id.* 82; *Maroney* v. *La Barre,* 77 *Id.* 556; *Tidd's Practice* 1029, *et seq.*

I assume the sufficiency of the pleaded cause of action, for the complaint is not challenged in that regard. It is immaterial whether the action sounds in trover and conversion, or is grounded in the mere neglect or refusal to restore to the owner chattels acquired without his consent or in a rightful possession become wrongful through noncompliance with the owner's lawful demand for possession. The essential inquiry is whether the proofs establish that the injury thus complained of was the result of the "willful *or* malicious act" of the defendant; and I find that it was.

While non-observance of the statute relating to the filing of conditional sales contracts is asserted, in that the particular contract, though made on December 7th, 1937, was not filed until January 13th, 1938, and defendant and his predecessors in title deny knowledge of the reservation of title when their respective purchases were made, the fact is that the conditional vendee's sale of the chattels was long after the filing of the contract; and, in such circumstances, the filing constituted constructive notice of the state of the title. Section 5 of the Uniform Conditional Sales Act so provides. *Pamph. L.* 1919, *pp.* 461, 462; *R. S.* 1937, 46:32-10, 46:32-11; *Morey & Co.* v. *Schaad,* 98 *N. J. L.* 799. And defendant has not sustained by proof his claim that, upon learning of the conditional sales contract, he tendered delivery of the goods to plaintiff. The weight of the evidence is to the contrary—*i. e.* that he refused plaintiff's insistent demands for possession of the chattels. While in no sense conclusive, his failure to defend this action is also a significant circumstance. I am not impressed with the contention that it was solely due to a lack of funds.

The terms "willful" and "malicious" are employed in the disjunctive; and it may very well be that the Legislature considered them interchangeable and usable in the same general sense. An act is "willful" if it be done intentionally and designedly, without justification. It has been said that, in legislative usage, the word ordinarily connotes evil intent or legal malice, in the sense that it presupposes a conscious

purpose to injure, or, possibly, wanton indifference to the natural consequence of the act. *Ft. Wayne & Wabash Valley Traction Co.* v. *Justus,* 186 *Ind.* 464; 115 *N. E. Rep.* 585; *Boyce* v. *Greeley Square Hotel Co.,* 228 *N. Y.* 106; 126 *N. E. Rep.* 647. See, also, *State* v. *Schutte,* 88 *N. J. L.* 396; *Haucke* v. *Beckman,* 96 *Id.* 409; *Staub* v. *Public Service Railway Co.,* 97 *Id.* 297; *Rose* v. *Squires,* 102 *Id.* 449. It would seem that on principle one is presumed to know and therefore, to intend the reasonable and probable consequences of one's own act, and is chargeable with its harmful fruits accordingly, although it is likely actual intent was the thing in legislative contemplation.. But however this may be, ill will is not an essential ingredient of malice in the statutory signification. Special malice was not within the legislative mind. Malice in the technical, legal sense—as here used—is the intentional doing of a wrongful act without just cause or excuse. A "wrongful act" is any act which in the ordinary course will infringe upon the rights of another to his damage, except it be done in the exercise of an equal or superior right. *Louis Kamm, Inc.,* v. *Flink,* 113 *Id.* 582, 588. The malice thus contemplated consists of the doing of the wrongful act in utter disregard of what the actor knew to be his duty, to the injury of another. *Vide Haucke* v. *Beckman, supra; Rose* v. *Squires, supra.*

Here, the proofs satisfy me that defendant, even though he may have unwittingly taken possession of the goods in the belief that his vendor had an absolute title, refused to surrender possession to plaintiff when its right thereto under the conditional sales contract had been made known to him; and thus defendant was guilty of a malicious act in the statutory view.

Motion granted.